## SWARTZ v. WHITE

No. 4988.   Decided August 15, 1932.   (13 P. [2d] 643.)

*J. E. Evans,* of Ogden, for appellant.

*D. J. Wilson,* of Ogden, for respondent.

FOLLAND, J.

This is an action in claim and delivery for repossession of a Buick roadster automobile, 1924 Model, Serial No.

110376, Motor No. 1143291. Plaintiff had judgment for the car or in case delivery thereof could not be had then for the sum of $250, its value, and for costs. Defendant appeals and assigns numerous errors. The district court made a finding of fact that plaintiff is and was at the time of the commencement of the action the owner and entitled to the possession of the automobile in question. Appellant contends this finding is not supported by the evidence and assigns error in that respect. The disposition of this assignment, if favorable to appellant, will dispose of this appeal.

Plaintiff claims ownership by reason of a purported sale to him of the car by M. J. Stewart on September 18, 1928. It is undisputed that on and prior to that date the car was owned by the defendant and was, in the office of the secretary of state, registered in her name as owner and legal owner. Stewart was in fact at no time the owner of the car. He obtained possession of the car and the certificate of registration, indorsed on the back thereof by Mrs. C. H. White as owner and legal owner, and while in possession thereof negotiated with plaintiff and obtained from him $125 said to be an "advance on the car." Stewart signed the certificate as the new owner in the presence of Swartz and delivered it to him. It was thereupon forwarded to the secretary of state and a new certificate issued in the name of M. J. Stewart and Swartz Sales Service as legal owner. Stewart and Swartz executed a sales contract wherein title to the car was retained by Swartz and $125 with interest was to be paid by Stewart in installments.

Plaintiff claims he was an innocent purchaser for value and that the defendant is estopped to claim that Stewart was an agent with limited authority who acted beyond his instructions because of his being intrusted with the possession of the car and indicia of title, and also that as between two innocent persons, one of whom must suffer through the fraud of a third, that the one who put it in the power of the other to practice the fraud must suffer the loss. Defendant contends that no title or right of possession ever vested in

Swartz because: (1) The transaction between Swartz and Stewart was in effect the borrowing of money and the title retaining contract amounted merely to a security and was in legal effect a chattel mortgage; (2) that at best Stewart was an agent in possession and could not bind his principal, if agent he was of the defendant, to a transaction different from that authorized by such principal; (3) that the car and certificate were obtained by circumstances which amount to a larceny by trick; and (4) that Mrs. White, the owner, did not herself intrust Stewart with possession of the car and the certificate, was entirely ignorant of the transaction by which he obtained possession until after it was completed, and that she never authorized or ratified such delivery to him.

The evidence discloses that the defendant, desiring to sell her car, advertised it for sale in an Ogden paper in August of 1928. Shortly thereafter M. J. Stewart called on her and represented that he could and would sell the automobile, asking a commission of $25 in the event of sale. He thereafter brought a prospective customer to see the car and took the car out several times for the purpose of sale, each time returning it. On one occasion he requested the certificate of ownership, but the defendant declined to give it to him. She, however, signed the certificate and took it with her on one occasion when she went with Stewart to investigate a prospective deal. This deal was not consummated and she put the indorsed certificate in a drawer of her dresser at her home. On September 18th Stewart called on defendant's husband at his place of business and stated to him he had a sale of the car at $400 and asked for the car. White gave him a key to the garage and Stewart then obtained the car and returned to White's place of business where he asked for the certificate. White went to his residence, took the certificate from the dresser drawer, and handed it to Stewart. The defendant at this time was not at home and knew nothing of the delivery of the car or the certificate to Stewart, and there is no evidence that she had authorized her hus-

band either to sell the car or deliver the possession of either the car or the certificate to Stewart. Stewart departed with the car and the certificate of ownership, promising to return within an hour with the car or a purchaser and $400, the purchase price. Stewart did not return within the hour. White became suspicious and made inquiries to locate Stewart, and finding that he was not at the place, nor had he been for some time, where he claimed to be working, he had one of the persons at the Nash agency call the secretary of state by telephone for the purpose of stopping any issuance of a certificate on the car and also notified the sheriff of what had happened. On returning to his place of business White found the car parked in the street within a short distance of his place of business. Stewart did not appear nor did he return the certificate of ownership. The certificate of registration was at all times in a container on the steering wheel of the car and was still there when the car was returned. A new certificate of ownership was issued by the secretary of state in the name of M. J. Stewart as owner and "Swartz Sales Service" as legal owner. Swartz testified he operated under the name of A. L. Swartz Sales Service. The secretary of State's office attempted to recall this certificate but Swartz refused to surrender it. The title retaining note was not put in evidence, so we are not informed of its contents except that it is said to be similar to other contracts made by automobile dealers when selling automobiles on the installment plan. The only evidence of the transaction between Swartz and Stewart was the testimony of Swartz. Stewart was not present at the trial and was said to be a fugitive from justice. Swartz's testimony is as follows:

"A. Mr. Stewart brought the car to my place of business, stating that he had it for sale, he said, however, that he could get along with an advance on the car, I asked him how much he wanted on it and he said, 'One hundred and twenty-five dollars.' I told him before we could do that we would have to have the certificate of ownership of the car, and that it would have to be signed over to our company, and he stated that he had it properly signed and that he would do

that. He endorsed it over to us and we, in turn, agreed on Mr. Stewart paying back for the car on the monthly installment plan under which we had him sign a title retaining note for the one hundred and twenty-five dollars, plus interest.

"Q. What, if anything, was done with the car at that time? A. Mr. Stewart, at the same time wanted to know if he could retain the use of the car, and we stated that he could do that, but we would have to have the ownership transferred so that he could be named as the registered owner and we as the new legal owners."

Stewart never surrendered possession of the car, but drove it out of Swartz's place of business after Swartz had looked over it and listened to the motor run.

The judgment for plaintiff must be reversed for the reason, as we view the record, that plaintiff never at any time obtained title to the car nor was he shown to be entitled to possession. It is the general rule "that no one can transfer a better title than he has unless some principle of estoppel comes into operation against the person claiming under what would otherwise be a better title." 24 R. C. L. 374. So also by the Uniform Sales Act, Comp. Laws Utah 1917, § 5132, where goods are sold by a person who is not the owner, and who does not sell them under the authority, or with the consent, of the owner, the buyer acquires no better title than the seller had, unless the owner is by his conduct precluded from denying the seller's authority to sell. One who acquires property by theft, or one who by fraud acquires possession of personal property for a particular purpose with the intention of appropriating the property to his own use and without an intention on the part of the owner to transfer title to him, cannot transfer a good title. 24 R. C. L. 375.

It is clear that Mrs. White, the owner, did not convey or intend to convey title to Stewart, and equally clear that Stewart at the time he obtained possession of the car and the certificate did so with fraudulent or criminal intent

to appropriate the car to his own use for the purpose of obtaining money by a sale of the car or a loan on it for himself. He had already on the morning of the 18th of September called on Swartz without the car and made preliminary arrangements to obtain money on it, which of course he could not do without the car and the certificate. When he returned in the afternoon with the car, he represented to Swartz that he was the owner and sought to either sell the car or obtain an advance on it. When Stewart called on White, and through him obtained possession of the car and the certificate, he deceived White as to his purpose because he knew at the time that he was not taking the car for the purpose of selling it on behalf of Mrs. White for $400 as represented. He had no one in mind to whom he could sell it for that amount of money. When White permitted him to take the car, he had no intention of transferring title to Stewart, even if it be assumed, which is not sustained by evidence, that he was acting with authority from Mrs. White, the owner. It therefore follows that Stewart had no title to convey and could convey none to Swartz. His conduct amounted to a larceny by trick. All the elements of that offense are present as "larceny by trick" has been defined in the case of *State* v. *Joseph*, 63 Utah 1, 221 P. 850, 851, quoting with approval from *People* v. *Berlin*, 9 Utah 389, 35 P. 498, as follows:

"If the owner of personal property is induced by fraudulent representations to part with its possession intending also to part with the title, the transaction cannot be larceny. But if the person receiving the possession without the title has at the time a secret intention of converting it permanently to his own use and does so without the consent of the owner, he commits the crime of larceny."

One obtaining possession of property by larceny cannot convey good title even to an innocent purchaser for value. *Baehr* v. *Clark*, 83 Iowa 313, 49 N. W. 840, 13 L. R. A. 717; *Hamilton* v. *Palmer* (Tex. Civ. App.) 265 S. W. 240.

It is urged, however, by respondent that the owner had placed the car and the indicia of ownership in the possession

of Stewart and she is therefore estopped or precluded from now asserting any claim of ownership because by her conduct she made it possible for him to defraud the plaintiff. We think, however, this theory cannot be ∎ sustained, even if it be conceded that the car and the certificate were given into Stewart's hands by authority of the owner. The possession of the certificate of ownership indorsed as it was by Mrs. White is not, under our motor vehicle law, evidence of ownership in Stewart. Comp. Laws Utah 1917, § 3972, as amended by Laws Utah 1925, p. 266, c. 125, § 3 (now § 3972X). The statute provides in effect that upon registration of an automobile the secretary of state shall issue a certificate of registration and of ownership to the owner, and upon a transfer being made the owner shall indorse the certificate of ownership and deliver it with the certificate of registration to the new owner; that the certificates shall be delivered to the secretary of state, who upon payment of a fee of $1, shall issue new certificates of registration and ownership to the person entitled, and that: "Until the secretary of state shall have issued such new certificate of registration and certificate of ownership, as herein provided in subdivision (d), *delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose.*" The words of the statute, italicized by us, are clear and unambiguous and undoubtedly mean what they say. Any claimed transfer from Mrs. White to Stewart was incomplete. Title had not passed and the transfer was not valid or effective for any purpose. *Briedwell* v. *Henderson,* 99 Or. 506, 195 P. 575; *Parke* v. *Franciscus,* 194 Cal. 284, 228 P. 435.

Under the provisions of this act, before one could regard Stewart as the owner of the car the transfer to him should have been completed by the issuance of a new certificate of registration and certificate of ownership in his name by the secretary of state. Stewart had possession merely of

the certificate of ownership indorsed on the back in blank by Mrs. White with no name filled in indicating the new owner. Stewart in the presence of Swartz, and at his request, signed his own name in the blank provided for the signature of the buyer. Under these circumstances Swartz cannot be regarded as an innocent purchaser for value. He must have known that any transfer of title from Mrs. White to Stewart was, by the law, regarded incomplete and not valid or effective for any purpose until properly registered in the office of the secretary of state and a new certificate issued to the new owner. At any rate, ignorance of the law is no excuse. Swartz therefore could not rely on the claim of Stewart that he was the owner of the car. Without attempting to decide the complete meaning or full operation of this provision of the statute, it is sufficient to say that the circumstances in this case, in view of that statute, amount to a flag of warning to any intending purchaser that there had been no completed sale or transfer of title by the registered owner. Swartz was thereby put on inquiry as to the responsibility of Stewart and his right to dispose of or pledge the car. By the possession which he had, Stewart could have been a buyer, or a bailee, or an agent with limited power to sell, or he could have been, as he was, in possession by larceny without any right whatsoever to transfer title. When plaintiff, without further inquiry than merely to ask Stewart, as he did, whether he owned the car, undertook to advance money on it, he did so at his own risk.

The facts of this case are clearly distinguishable from those in *Jones* v. *Commercial Investment Trust*, 64 Utah 151, 228 P. 896, and *Harrison* v. *Auto Securities Co.*, 70 Utah 11, 257 P. 677, 57 A. L. R. 388. The evidence strongly suggests that the transaction between Swartz and Stewart was that of a borrowing. *Olsen* v. *Legal Adjustment Bureau*, 142 Wash. 446, 253 P. 643. The language used was an "advance on the car," notwithstanding the parties went through the form of a sale to Swartz and a resale to Stewart

on a title retaining contract. The amount of money advanced was $125, although the conceded value of the car was at least twice as much. Because of the view we take of the case, it is unnecessary to further discuss or to decide whether the transaction was a loan and the title retaining contract in effect a chattel mortgage.

The judgment of the district court is reversed, and the cause remanded to the district court of Weber county for a new trial. Costs to appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.